May it please the court, my name is Jessica Birch and I represent the petitioner Lyndon Graham. I would like to reserve three minutes for rebuttal and I'll watch my time. Today, we request that this court grant the petition for review and transfer this case to the District Court for the District of Arizona where that court can hold a de novo evidentiary hearing at which the government will bear the burden of establishing that Lyndon Graham is not a citizen of the United States by clear, convincing, and unequivocal evidence. Your Honors, this is a citizenship case. Citizenship cases are treated differently, and deliberately so, from the ordinary cases where non-citizens face removal. So, for example, in asylum cases or Convention Against Torture cases. Counsel, what is the threshold showing of which you are responsible to procure the relief which you seek? What must you show us in the record to get a de novo review by the District Court? Well, I need to show two things. First, there needs to be a non-frivolous claim of citizenship. That's the legal standard. So in our case, that non-frivolous claim of citizenship would be that he's born here. I don't think that there is any argument about that, whether if that were established, whether that's a legitimate claim to citizenship. Well, it's frivolous if he's claiming citizenship when he's using his alias. That would be the factual question, however. So there is the sort of legal standard, which is a non-frivolous standard. And then the factual standard is whether there's a possible claim to citizenship. Possible. Possible. That's the word, I believe, that is used by the U.S. Supreme Court in Augusto. Anything's possible. Your Honor, that's right. I mean, it's a very low standard in front of this Court. You pretend like it's a motion for summary judgment where the Petitioner is, where my client is the nonmoving party. So he just doesn't know. You're saying that there's a tribal issue as to a material fact? That's correct. Well, that's not possible. That's a higher degree of proof than just possibility. But it's not quite a summary judgment standard, Your Honor, and that's why it's a little bit confusing. The standard that's written into the statute, into 8 U.S.C. 1252, uses the language of Rule 56, which if we were in a district court would be the summary judgment standard. However, when the U.S. Supreme Court encountered this in Augusto, the U.S. Supreme Court said, well, it's like summary judgment, we should think of it that way. But it's not precisely summary judgment. Do you have to argue that it's a lower standard than the summary judgment standard in order to prevail? I don't think so, Your Honor. I believe that in this case, it would be could prevail even if it were the summary judgment standard. However, just to keep the legal standard clear. So why don't you focus so your you have to show that there's a genuine issue of material fact. That's correct, Your Honor. Assuming that that's the standard as to your client's citizenship. And so precisely what is that here? Well, the first is with the government's contention as to how they're proving noncitizenship. And the first is. Now, wait a minute. How do you prove that there is at least a tribal issue of fact that Mr. Graham is a native-born citizen of the United States? What's your record of that? Because he's been found to be an alien, I assume. Yes. And there are two questions here, and these are both important. But the first, Judge Schroeder, to your question about him being found an alien, is that that does not that is one of the reasons why citizenship cases are different. You are not you don't have to give any deference to the BIA or the IJ's finding that he is an alien in this case. And to your question, Judge Bea, about what we can do to show that there's an issue of material fact. Not what you can do. What did you do? What did I do? What is in this record, right? That's right, Your Honor. The first thing I did was we found Winston Graham. Winston Graham is the Jamaican citizen whom the government says is my client, is Lyndon Graham. So what the government did in this case to prove that my client, the names are very similar. So my client is Lyndon. This other guy. Counsel, the name Winston Graham is not so unusual as to eliminate the possibility that there are two Winston Grahams. That is true, Your Honor. It's showing that there is one Winston Graham who's a Jamaican. It doesn't say there isn't another Winston Graham who's a Jamaican also. That would be true if that's all that there was that would show that. All right. What's the next piece of evidence? Before we leave that, you found someone who says that he is Winston. He says that he is Winston Graham. That's right, Your Honor. In the record, the government put forth a 1985 H-2 labor visa, which is what they say shows that my client, Lyndon Graham, is an alien, because on this H-2 labor visa, it shows that the person's place of birth is Jamaica. This other person, Winston Graham, who executed the declaration in this case, says that's his H-2 labor visa, that he came over in September of 1985 on that H-2 labor visa. The other piece of documentary evidence that the government put forth in this before the BIA and the IJ was a 1987 adjustment of status to lawful permanent resident. That was the person who tried to get that for Winston Graham was his mother, Norma Moore. And in our case, Winston Graham, the person whom we have tracked down and who says that his mother is Norma Moore and that it's his 1987 adjustment of status visa. So these two pieces of evidence, at this time with the summary judgment sort of standard, the inferences have to run in favor of the petitioner here, and we have somebody saying those are his, not my client. But you have three pieces of evidence that show that a Jamaican named Winston Graham claims that certain documents refer to him. Right? That's correct. Let's step back. What evidence do you have that your Winston Graham was born in the United States? That my Lyndon Graham. My Lyndon Graham does not have to put forth evidence, Your Honor. The burden is on the government in this case. Citizenship cases are considered. I'm sorry. I thought you were telling me that the burden of proof on you is the similar to that of a nonmoving party in a motion for summary judgment to establish a material issue of fact as to whether your man was born in the United States. How do you establish a material issue of fact? I do. I am doing that by showing that my client, Lyndon Graham, is not the person whom the government has established is the Jamaican born. By showing that there is a Jamaican named Winston Graham and by documents showing a Jamaican named Winston Graham, do you think that that creates a tribal issue of fact as to whether your Winston Graham is an American citizen? That's right. That's part of it, Your Honor. Yes. And, of course, you do not bear the ultimate burden on the citizenship question. Is that correct? That's correct, Your Honor. The burden is on the government to prove by clear and convincing evidence. So that would have to be that clearly affects the calculus on the summary judgment issue, doesn't it? That's correct, Your Honor. That is what the U.S. Supreme Court has said in cases like Liberty Lobby, that if the burden of proof is higher at the summary judgment stage on the moving party, then it's also harder for them to essentially get what would be summary judgment before this Court. But, Your Honor, Judge Bea, if you're not particularly persuaded by the H-2 labor visas and the 1987 change of status, and, by the way, there should be fingerprints and photographs from Winston Graham in those. We could dispose of this very quickly in the district court if we can get the fingerprints and photographs. Would you explain to me what is in the record with respect to fingerprints? From what I can tell, Your Honor, there are a bunch of fingerprints from him, from Linden Graham, from my client. So he has some fingerprints when he was booked on his charges, so from the mid-'90s and early 2000s. And then he kept putting forth more fingerprints. So we have a bunch of newer fingerprints from him from the immigration proceedings from 2003 and 2004. But is even the INS agent, Agent Chewbacca, in this case admitted? As far as he can tell, too, there were no fingerprints from Winston Graham in this record against which to compare Linden Graham's fingerprints. But all the fingerprints in the record are of your client. That's correct. And your point is that they just keep matching your client's fingerprints to his own? That's correct, Your Honor. But there's more than just the fingerprints and more than the 1985 and 1987 visas. In July of 2006, Linden Graham was removed to Jamaica, where he was put in a Jamaican detention holding facility while they figured out sort of who he was. And he stayed there for 15 months. But at the end of that 15 months, the Jamaican government released him from the detention facility with a proclamation that Linden Graham, my client, is not a Jamaican citizen. And then they offered to pay him $2.2 million Jamaican for unlawfully withholding him in Jamaica. Any evidence of that other than your client's declaration? I do, Your Honor. It was submitted by my client in his petition for review from February of 2010. I believe it's docket number 30 in this Court's docket. And that is the signed agreement between him and the government with the $2.2 million Jamaican dollars. And in addition, with respect to the release. Is there a birth certificate or a certificate of live birth? We've heard quite a bit of that recently. Indicating that your man was born on government, on U.S. soil? No, there is not, Your Honor. But Murphy v. INS, issued by this Court in 1995, says that, first of all, it is not the petitioner's burden to bring forth his birth certificate. It is the government's burden to prove nonbirth in the United States. But secondly, the Court in that case said that there's a perfectly adequate explanation for that U.S. Virgin Islands-born petitioner not to have his birth certificate. And that's that he was born at home. And my client was not. He was supposedly born on some plantation? My client, yes, Your Honor. Your client, yes. Yes, Your Honor. I don't know exactly where Murphy, in Murphy v. INS. I don't know where he was born, but he was born at home as well. But in addition to the release, we also have, which is attached as an addendum to our opening brief, we do have the Jamaican proclamation that my client is not Jamaican. If you have about 4 minutes left, if you want to reserve some for rebuttal, I don't think you do. I'll do that, then, Your Honor. Thank you. I'll reserve the remainder of my time for rebuttal. Thank you. Parsons. May it please the Court. Good morning. I'm Cynthia Parsons. Excuse me. And I'm representing the Respondents in this case. Respondents ask this Court to deny the motion to transfer the petition to the district court for a hearing on a genuine issue of citizenship. The government argues that Petitioner has failed to meet the burden of establishing a genuine issue of fact before this Court. Has any filed a declaration saying he was born in St. Croix? Has Petitioner filed a declaration? Yes, Your Honor. Did Petitioner file a declaration? Did you object to that on grounds of lack of foundation and hearsay? Pardon me? Did you object to that on any evidentiary grounds? On the declaration? Yes. No. Well, then why not? That's enough? If that is all that's required, then there is no standard. Anyone can swear out a declaration claiming anything. If it doesn't protect your record, that's enough evidence. No, Your Honor. The government does not agree with that. It's not enough because not only does it just have to be an issue, it has to be a genuine issue. And genuineness --- It's more genuine than saying I was born in the United States. I wasn't, but I mean, if somebody says I was born in the United States. Well, I understand. But that means that anyone can sign a declaration saying I'm a citizen of the United States, and that would automatically ---- I beg your pardon. If a U.S. attorney is asleep at the switch and does not make an objection on grounds of fact of foundation and hearsay, it is evidence in the record. It was first presented as a declaration before this Court, and ---- There's no objection. So therefore ---- There was no reason to object. Do you think that your statement of where you were born is not hearsay? It may or not be. I'm not challenging that he is claiming that he was born in the Virgin Islands. Not claiming. Best evidence. He's saying under penalty of perjury I was born there. You don't object to it, in it comes an evidence, game's over. Actually, the government did pose, didn't oppose an objection on hearsay, but did oppose several objections regarding the declaration and ---- He was born because very few children remember where they were born? The government did raise the lack of adhering to the standards under Rule 56 for declarations. Yes, we did say that there had to be ---- it had to be based on personal knowledge, that there had to be foundation. Yes, the government did raise that in the brief. Personal foundation, but not a hearsay objection. Not hearsay, no. But we did raise two foundational ---- not just of Lyndon's. We'll say Petitioner and Winston. Petitioner being, obviously, the Petitioner, and Winston being the other person who signed the declaration who lives in Georgia. That way we aren't getting the multitude of similar names confused. So, yes, the government did raise some objections to the declarations. But if the issue of genuineness is nothing more than a declaration, then the Supreme Court's decision in Joseph really don't make a lot of sense, because in Augusto, the Supreme Court noted specifically in deciding that there was a genuine issue that the Petitioner's declaration was supported by three other witnesses that had something to do with its probate ---- with the probativeness of the genuine issue, that the fact that a half-brother and two other people, two family friends I believe it was, also attested consistently to all the facts that the Petitioner had stated in the declarations. Similarly in Joseph, there were additional documentary evidence, additional declarations and witnesses who attested to and backed up the claims by the Petitioner. So if Augusto is the standard, and that is the case that Joseph relied on rather heavily, and Augusto makes a point that part of the reason why that case was found to have a genuine issue and that the facts were probative, then that seems to reason that part of the decision-making in whether there's a genuine issue and whether the evidence is sufficiently probative is whether or not there is something, anything, to corroborate, substantiate, back up or go along with the claims made by a Petitioner either in the Petition for review itself or in a declaration. And in this case, there simply is not. If you ---- even if you look at the facts and construe them in a way most favorable to the Petitioner, as they say you should, those facts still don't make it past the genuineness and probative standard. But don't you claim that he's a Jamaican? Absolutely. Absolutely. His birth certificate. And there's evidence in the record from the Jamaican government saying a Jamaican, he is not. Well, there's evidence. Is that an issue of fact? There's evidence in the record that the Jamaican government published something in a newspaper that said a person named Winston George Graham, which is a name he claims he is not, a person he is not, that Petitioner claims he is not Winston George Graham, or someone that goes by the name Lyndon Winston George Graham, which is a name that Petitioner has never claimed he used. So there is a copy of an article in the Jamaican Gazette referring to one person that Petitioner affirmatively says he is not and to a name that he's never used. Is that sufficiently probative? The government does not think so. Your position is that the official Gazette of the Jamaican government doesn't name this gentleman, Lyndon Winston Graham, as being a person who is not a Jamaican? It is our position that the names in that document do not match names that he has ever used. One of the names, the other name, Winston George Graham, is a name of a person he affirmatively claims he is not. So, yes, essentially, yes. I am agreeing with you, Judge Baye. I apologize. I'm a long way of getting around to saying yes. So if you're going to look and follow Joseph and Augusto, as the Petitioner asks that you do, then clearly there has to be something more to genuineness and probativeness than a declaration. As I said, otherwise, yes, someone, anybody can claim anything. And, yes, anybody can swear to anything. And we definitely would like to believe those to be true. But even though we are talking about citizenship, and I'm sorry, I thought you were going to ask a question. Even though we're talking about citizenship, and the cases do say that, yes, this is one of the most substantial rights you can have, there's a flip side to that, too. Because it is such an absolutely precious right, the Court also doesn't want to be where there really aren't any genuine issues. It's an important right and should be treated that way on both sides. So the government also adds that the documents that there is just the one gazette, there is the alleged settlement that he claims, once again, saying that he got that to view credibility. It's an issue of genuineness and probative value. Well, I guess I understand what you're saying. But your – I guess I don't quite understand why this is making it easy for him, because he has – yes, he has come forward with a declaration. But what he's asking for is that it be transferred to district court so there can be a trial, and he will have to testify to all this. He will have to undergo cross-examination. He'll have to bring out what all these documents are. He could be prosecuted for perjury. So it's not really – it's a long road that he has to travel. This is just the first itty-bitty step. So I guess I'm not understanding why your argument is that as a policy matter, if we say that this is – there is a genuine issue of fact because we're not in the business of doing credibility determinations or making evidentiary judgments as a matter of routine, that it be transferred to the district court, which is where it started out, I guess, that that would be making it so easy, reestablishing bad precedent. So I wish you'd help us in writing our opinion. If I – if I gave the Court a little bit too much emphasis on that, I do apologize. The only point I was making about the policy argument was that, by the same token, it is an important right, no matter how much way you look at it, and from either side. The issue is not whether it's – the issue is not a policy argument. The issue is whether or not he's established a genuine issue. And in that, we have the probativeness and more the scintilla. What we're saying is that the declaration alone, if you look at Augusto, the facts in Augusto and Joseph, and the reasoning that they use, simply isn't enough, that the additional evidence that he has produced also doesn't make it past the probative and genuineness issue, and you should not transfer it. One thing I do want to point out very – very quickly, though, is that there are actually several different things that we're talking about here. Early in her argument, and then again a little bit later, the – and I hope I wrote these notes correctly, and I – if I did not, I beg the Court to please correct me – that the Petitioner said that the government had the burden of proof to establish that he was not a citizen of the United States. That is not what we have the burden to do. The way it works, and actually the case of Ayala, Bill in a Wave of Beholder, which I believe both Petitioner and I cited, 572 F. 3rd, 736, at note – I believe it's footnote 3 – goes into some of the traditional who starts the burden, who has it shifted. The burden starts with the government to prove alienage before the immigration judge. Once the government has given a birth certificate that is presumptive proof of alienage, the burden then shifts to the Petitioner to rebut that presumption. The IJ and the BIA decided that he had not sufficiently rebutted that presumption. He petitioned to this Court. Now, before this Court, the Petitioner must show this Court that there is a triable issue, that there is a genuine issue of facts sufficient to transfer to the district court. However, once in the district court, it is not the government's burden to disprove his – to prove his citizenship in Jamaica or disprove his citizenship in the United States. It is the Petitioner's burden to show that he is a citizen of the United States. That has been his burden from the beginning. The government has not had that burden since – in fact, we've never had that burden because the IJ can't determine citizenship. All they can determine is alienage. Once it gets here, yes, you can determine if there's a triable fact. But once it gets to district court, the Petitioner has the burden to establish his citizenship. And he may not be able to do it. He may not. And our argument is that he also can't establish a triable fact. I would ask the Court to, in its review, to look carefully at some of the statements and claims made by the Petitioner regarding the testimony of Agent Chebaka. They made some, or he made some, several claims regarding the fact that she – or he allegedly testified inconsistently. To the contrary, Agent Chebaka testified consistently that the interview that he had with Agent – or with the Petitioner occurred March 6, 2003, and that the subsequent date on the interview form of October 3, 2003, was nothing more than a processing date, that it was – the interview took place on one date, the final processing of that form took place on another date, and whereas the government always would like things to be done sooner, as would everyone else, quite often these things don't happen simultaneously as they should. And he testified to that a number of times, that that's the reason why they were different dates. Kennedy, is your position that the other Winston Graham may very well be a different person, but this Winston Graham is not that person? Okay. To be clear, our position is that Winston George Graham, who allegedly lives in Georgia and signed a declaration, may, in fact, be Winston George Graham, may, in fact, be from Jamaica, and in all likelihood could be a lawful permanent resident of the United States. Our position is taking all that is true. That does not prove that Lyndon Winston Graham, the Petitioner, is a native and citizen of the United States, because it doesn't show anything about where he was born. And this person that was detained in Jamaica and then paid the money is still another person that he was? Somebody Graham? We, to be very honest with you, we don't know who that is. It could be the Petitioner. He was deported to Jamaica, and in all likelihood he was detained. What we are saying is the documents that were produced to document this don't necessarily have names that we can tie directly, at least logically, and based on other facts that we have, to the Petitioner, because it either has a name he claims he does not have or a name that he doesn't claim he ever used. Do you dispute the Petitioner's argument that the fingerprint evidence only establishes that the Petitioner is the person that's a party to this and nothing more? The only fingerprints that are in the record are fingerprints that were consistently taken of the Petitioner, Lyndon Winston Graham. To the knowledge of the government, there are no other fingerprint cards in that alien file attributed to the Petitioner, Lyndon Winston Graham. So the government asks this Court to deny the motion to transfer. Do you have any further questions? No. Thank you. Ms. Burton. What evidence do you have other than your client's declaration that he was born in San Juan? Other than his declaration? I'm sorry. I was getting a little feedback there. Okay. Other than his declaration at this point, we do not have any primary evidence. However ---- You don't have any primary, secondary, or tertiary evidence. You don't have any evidence that he was born. You have evidence that the other Winston Graham, the Jamaican citizen, et cetera, et cetera. You have evidence that your man is said by the Jamaican government not to be a Jamaican citizen, but with a different name than the government is pursuing. So the only evidence that you have that this man was born in San Juan is that he's said he was born in San Juan. Except, Your Honor, it's not that the Jamaican government, for example, picked names randomly and assigned them to the Petitioner, Lyndon Graham. They used the names that the government had given them in this very proceeding. It is the government called my client. It is the government who is calling Lyndon Graham my client, Winston George Graham. That is likely why that is the name that's found in the Jamaican Gazette. And the Jamaican Gazette, Your Honor, is not just some newspaper. It's like the United States Code. It's their law down there. So it's ---- Your position is the government should be stopped from claiming that the Jamaican I'm not quite sure I understand the question, Your Honor. But if I do, if I understand it, I think the answer is yes. Because I think what you are saying is that the government can't say, you can't rely on this piece of evidence because it doesn't name your client precisely Lyndon Winston Graham. Because it's the government in this case that has named my client all sorts of strange things, including Winston George Graham. And the government now tries to say, well, we believe that this Winston George Graham who you have a declaration for might be Winston George Graham. But the only thing that the government documentary evidence that the government had in this record to prove my client was not a citizen or to prove he was an alien were these H-2 labor visas and the 1985 change in status. And it is those two documents that Winston George Graham, this other person, now says are his. Do you accept the government's statement a few moments ago that if this case were to get to the district court, you would have the burden of establishing citizenship, United States citizenship? I actually have not looked at the burden before the district court. I believe it's treated like a declaratory judgment action. My understanding was it was still the shifting burdens paradigm that we have in cases like Chau v. INS from this court where first the government bears the burden of establishing foreign birth by clear convincing and unequivocal evidence. And only at that point does the burden of production shift to the petitioner. And when I looked at Ayala Villanueva at that footnote, that is still what I understood was that there are shifting burdens. However, I can be educated on that matter. So if we get in this court to the district court. But wouldn't the answer to that question be very pertinent to who has what burden with respect to the matter directly before us now? Because the question is whether we should send this to the district court. No, Your Honor, because that standard is clear. And that standard is the summary judgment standard where all the inferences are taken in favor of the petitioner and where we just need to raise a tribal issue of material fact. But burdens and summary judgment are allocated according to who has the burden of proof at trial. And my understanding from reading the cases, and again, if I was wrong, then I am prepared to be educated if we get before the district court. But my understanding was that it remains the same shifting burdens from Chau and the cases of that nature, including Ayala Villanueva, which the government just quoted to us. Your Honors, I see that I am out of time. So unless there are any other questions, I would just say that the burden is quite low. All there needs to be is an issue of material fact. If you're confused about who Lyndon Graham is and who Winston Graham is, that may very well be enough. And we would request a transfer to the district court. Thank you. Thank you. Are there any further questions? Thank you. The matter just argued is submitted. We thank counsel for participation in our pro bono program. And we thank counsel for both sides for the argument presented. That concludes the court's calendar for this morning, and the court stands adjourned.
judges: Schroeder, Ripple, Bea